UNITED STATES U.S. DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE TREMONT SECURITIES LAW, STATE LAW AND INSURANCE LITIGATION | Master File No. 08 Civ. 11117 (TPG) |
| SPECTRUM SELECT, L.P., Plaintiff, -against- TREMONT GROUP HOLDINGS, INC., ET AL., Defendants. | No. 12-cv-09057 (TPG) |
| ANIKSTEIN, ET AL., Plaintiff, -against- TREMONT GROUP HOLDINGS, INC., ET AL., Defendants. | No.: 12-cv-09058 (TPG) |
| MICHAEL BECKER, ET AL., Plaintiffs, -against- TREMONT GROUP HOLDINGS, INC., ET AL., Defendants. | No.: 12-cv-09060 (TPG) |

BILGORE, ET AL.

    Plaintiff,

   -against-

TREMONT GROUP HOLDINGS, INC., ET AL.,

    Defendants.

No.: 12-cv-09061 (TPG)

KARASEL II, L.P.,

    Plaintiff,

   -against-

TREMONT GROUP HOLDINGS, INC., ET AL.,

    Defendants.

No. 12-cv-09062 (TPG)

SPECTRUM SELECT II, L.P., ET AL.

    Plaintiffs,

   -against-

TREMONT GROUP HOLDINGS, INC., ET AL.,

    Defendants.

No. 12-cv-09063 (TPG)

COCCHI, ET AL. ,

        Plaintiff,

    -against-

TREMONT GROUP HOLDINGS, INC., ET AL.,

       Defendants.

No. 12-cv-09064 (TPG)

ECF Case

Electronically Filed

## MEMORANDUM OF LAW IN SUPPORT OF MASSMUTUAL'S MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT

BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, NY 10022
Tel.: (212) 705-7000
Fax: (212) 752-5378
*Attorneys for Defendants*
*Massachusetts Mutual Life Insurance Company*
*and MassMutual Holding LLC*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 1

I.      PROCEDURAL HISTORY ......................................................................... 1

II.     ALLEGATIONS IN THE COMPLAINT .................................................. 2

      A.    Plaintiffs ................................................................................... 2

      B.    MassMutual ............................................................................... 3

ARGUMENT ................................................................................................. 6

I.      STANDARD FOR DISMISSAL ............................................................... 6

III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON
        LIABILITY ................................................................................................. 6

      A.    Plaintiffs Fail to Allege that MassMutual Actually Controlled Tremont or
             the Funds ................................................................................... 8

            1.    Allegations of a Parent/Subsidiary Relationship Are Legally
                 Insufficient to Allege Actual Control ....................................... 8

            2.    Plaintiffs' Other Allegations about MassMutual Derive from
                 MassMutual's Status as Owner and Do Not Allege Actual Control ....... 10

            3.    Plaintiffs Fail to Allege that MassMutual Exercised Actual Control
                 over the Transaction at Issue, TPI's Management of the Funds or
                 Plaintiffs' Investments .............................................................. 12

      B.    Plaintiffs Fail to Allege "Culpable Participation." ............................. 13

            1.    Plaintiffs Fail to Allege that MassMutual Had Knowledge of
                 Tremont's Alleged Misconduct ............................................... 14

            2.    Plaintiffs Fail to Allege that MassMutual Participated in Any
                 Fraud ......................................................................................... 17

IV.    THE COURT SHOULD DISMISS THE SECURITIES FRAUD CLAIM
        AGAINST MASSMUTUAL HOLDING .................................................... 17

CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

C<span>ASES</span>

*Agile Safety Variable Fund, L.P. v. Tremont Grp. Holdings, Inc.*,
   Case No. 10-CV-2904 (Colo. Dist. Ct., Boulder Cty. June 8, 2012)........................................7

*American Protein Corp. v. AB Volvo*,
   844 F.2d 56 (2d Cir. 1988)..........................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................6

*Askenazy v. Tremont Grp. Holdings, Inc.*,
   Civ. A. No. 2010-04801-BLS2, 2012 WL 440675 (Mass. Super. Jan. 26, 2012)....................7

*ATSI Comm., Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)..............................................................................................6

*Bayerische Landesbank, New York Branch v. Barclays Capital, Inc.*
   902 F. Supp. 2d 471 (S.D.N.Y. 2012)..........................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................6

*Boguslavsky v. Kaplan*,
   159 F.3d 715 (2d Cir. 1998)............................................................................................6

*Burstyn v. Worldwide Xceed Group, Inc.*,
   No. 01 Civ. 1125(GEL), 2002 WL 31191741 (S.D.N.Y. Sept. 30, 2002)........................6, 14

*Chill v. Gen.l Electric Co.*,
   101 F.3d 263 (2d Cir. 1996)..........................................................................................15

*CLAL Finance Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*,
   No. 09 Civ. 2255(TPG), 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010) ................................6

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)..........................................................................................14

*Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,
   551 F. Supp. 2d 210 (S.D.N.Y. 2008)............................................................................17

*Ellison v. Am. Image Motor Co.*,
   36 F. Supp. 2d 628 (S.D.N.Y. 1999)................................................................................9

*Gartner v. Snyder*,
   607 F.2d 582 (2d Cir. 1979)............................................................................................9

**TABLE OF AUTHORITIES**
(continued)

Page

*H & H Acquisition Corp. v. Fin. Intranet Holdings*,
  669 F. Supp. 2d 351 (S.D.N.Y. 2009).....................................................................8

*Howard v. Hui*,
  No. C 92-3742-CRB, 2001 WL 1159780 ..............................................................10

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)....................................................................8

*In re Bristol Myers Squibb Co. Sec. Litig.*,
  586 F. Supp. 2d 148 (S.D.N.Y. 2008)....................................................................9

*In re CIT Grp. Inc. Sec. Litig.*,
  No. 08 Civ. 6613(BSJ), 2010 WL 2365846 (S.D.N.Y. June 10, 2010)..................14

*In re Global Crossing, Ltd. Sec. Litig.*,
  No. 02 Civ. 910, 2005 WL 1875445 (S.D.N.Y. Aug. 5, 2005) ...............................8

*In re Lehman Bros. Mortg. Backed Sec. Litig.*,
  650 F.3d 167 (2d Cir. 2011)..................................................................................12

*In re Livent, Inc. Sec. Litig.*,
  78 F. Supp. 2d 194 (S.D.N.Y. 1999)......................................................................8

*In re MBIA, Inc., Sec. Litig.*,
  700 F. Supp. 2d 566 (S.D.N.Y. 2010)....................................................................6

*In re Smith Barney Transfer Agent Litig.*,
  884 F. Supp. 2d 152 (S.D.N.Y. 2012)..................................................................8, 9

*In re Sotheby's Hldgs., Inc.*,
  No. 00 Civ. 1041(DLC), 2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000)..................8

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  No. C 99-00109 SBA, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000)...................10

*In re Time Warner Inc. Sec. Litig.*,
  9 F.3d 259 (2d Cir.1993)......................................................................................18

*In Re Tremont Sec. Law, State Law and Ins. Litig. (Cummins, Inc. v. New York Life
  Ins. Co.)*,
  2013 WL 5393885 (S.D.N.Y. Sept. 26, 2013)........................................................7

*In Re Tremont Sec. Law, State Law and Ins. Litig. (Elendow Fund, LLC v. Rye Select
  Broad Market XL Fund)*,
  No. 08-cv-11117 (TPG), 2013 WL 5179064 (S.D.N.Y. Sept. 16, 2013) .................7

**TABLE OF AUTHORITIES**
(continued)

Page

*In re WorldCom, Inc. Sec. Litig.*,
   02 Civ. 3288(DLC), 2004 WL 1097786 (S.D.N.Y. May 18, 2004) ..........................................9

*Itel Containers Intern. Corp. v. Atlanttrafik Exp. Serv. Ltd.*,
   909 F.2d 698 (2d Cir. 1990)..........................................................................................9

*Kalin v. Xanboo, Inc.*,
   526 F. Supp. 2d 392 (S.D.N.Y. 2007)..................................................................16

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir.2001)...............................................................................17

*Lustgraaf v. Behrens*,
   619 F.3d 867 (8th Cir. 2010) ........................................................................9, 10

*McIntire v. China MediaExpress Holdings, Inc.*,
   927 F. Supp. 2d 105 (S.D.N.Y. 2013)......................................................16, 17, 18

*Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.*
   747 F. Supp. 2d 406 (S.D.N.Y. 2010)...................................................................16

*Meridian Horizon Fund, L.P. v. Tremont Grp. Holdings, Inc.*,
   No. 09 Civ. 3708, 2012 WL 6168151 (S.D.N.Y. Dec. 11, 2012)...........................7, 13

*Metge v. Baehler*,
   762 F.2d 621 (8th Cir. 1985) ..........................................................................12

*Mishkin v. Ageloff*,
   No. 97 Civ. 2690(LAP), 1998 WL 651065 (S.D.N.Y. Sept. 23, 1998)...........................14, 17

*Murray v. Miner*,
   74 F.3d 402 (2d Cir. 1996).................................................................................9

*Prickett v. New York Life Ins. Co.*,
   896 F. Supp. 2d 236 (S.D.N.Y. 2012)....................................................................7

*Public Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
   714 F. Supp. 2d 475 (S.D.N.Y. 2010)..................................................................10

*S. Cherry St., LLC v. Hennessee Grp. LLC*,
   573 F.3d 98 (2d Cir. 2009)...............................................................................14

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996)..............................................................................6

## TABLE OF AUTHORITIES
(continued)

**Page**

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
  03 Civ. 3120, 2005 WL 1902780 (S.D.N.Y. Aug. 9, 2005) ...................................................11

*SSR II LLC v. John Hancock Life Ins. Co.*,
  No. 652793/2011, 2012 WL 4513354 (Sup. Ct. NY Co. Sept. 28, 2012) ...............................8

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,
  No. 00 Civ. 8058, 2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) ..........................................14

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
  250 F.3d 87 (2d Cir. 2001).....................................................................................................10

*United States v. Bestfoods*,
  524 U.S. 51 (1998).......................................................................................................9, 10, 11

*VT Investors v. R&D Funding Corp.*,
  733 F. Supp. 832 (D.N.J. 1990) ..............................................................................................17

*Yale M. Fishman 1998 Ins. Trust v. General Am. Life Ins. Co.*,
  2013 WL 842642 (S.D.N.Y. Mar. 7, 2013) ..............................................................................7

*Zutty v. Rye Select Broad Market Prime Fund, L.P.*,
  No. 113209/2009, 2011 WL 5962804 (Sup. Ct. NY Co. Apr. 15, 2011)...........................7, 17

STATUTES

15 U.S.C. § 78bb(f)...........................................................................................................................2

15 U.S.C. § 78t(a) ............................................................................................................................6

15 U.S.C. § 78u-4(b)(2) ...................................................................................................................2

28 U.S.C. § 1658(b) .........................................................................................................................7

Securities Exchange Act of 1934 §10b-5.....................................................................................1, 18

Securities Exchange Act of 1934 §10(b) .......................................................................................1, 18

RULES

Fed. R. Civ. P. 9(b) .........................................................................................................................18

Fed. R. Civ. P. 12(b)(6)......................................................................................................................6

## INTRODUCTION

Plaintiffs, a group of 108 sophisticated investment funds, entities and individuals, invested in a number of Funds which Plaintiffs knew used Madoff as an investment manager. Plaintiffs seek to recover their Madoff-related investments by suing ten defendants,[1] including MassMutual, the corporate great-grandparent of the Funds' general partner.  Based solely on MassMutual's status as "ultimate owner of all the other Defendants," Plaintiffs seek to impose liability on MassMutual as a "control person" under Section 20 of the Exchange Act.[2]

Plaintiffs do not allege that they interacted whatsoever with MassMutual, much less that MassMutual made any representation to them about the Funds or their investments.  Plaintiffs allege no specific wrongful conduct by MassMutual and no facts that support a plausible inference that MassMutual exercised actual control over Tremont, its investment decisions, the Funds or Plaintiffs' investments.  Nor do they meet the heightened pleading standard of the Private Litigation Securities Reform Act ("PLSRA") that requires an allegation that MassMutual was a culpable participant in any alleged fraud (*i.e.*, engaged in fraudulent conduct with a culpable state of mind).

## BACKGROUND

### I.      PROCEDURAL HISTORY

Plaintiffs originally filed seven actions, spread among Florida state courts, in an apparent attempt to circumvent the requirements of the Securities Litigation Uniform Standard Act, 15

---

[1] The defendants are the Rye Select Broad Market Fund, L.P., Rye Select Broad Market Prime Fund, L.P., Rye Select Broad Market XL Fund, L.P. (the "Rye Funds"); Tremont Opportunity Fund II, L.P. and Tremont Market Neutral Fund, L.P. (the "Tremont Funds") (collectively, the "Funds"); the Funds' general partner, Tremont Partners, Inc. ("TPI") and TPI's direct and indirect parent companies: Tremont Group Holdings, Inc. ("TGHI"); TPI's corporate grandparent, the holding company, Oppenheimer Acquisition Corp. ("OAC"); and TPI's corporate great-grandparents, MassMutual Holding LLC and Massachusetts Mutual Life Insurance Company (together, "MassMutual").

[2] Plaintiffs include MassMutual Holding LLC in Count II, a claim for securities fraud in violation of Securities Exchange Act §10(b) and SEC Rule 10b-5.  This appears to be an error, but in any event, such a claim would fail for the reasons discussed in Section III, *infra*.

U.S.C. § 78bb(f) ("SLUSA") and the PSLRA, 15 U.S.C. § 78u-4(b)(2).[3]  *See, e.g.,* Opinion dated Sept. 3, 2013 at 5 (Docket No. 866) ("SLUSA ensures that plaintiffs cannot avoid the heightened pleading standards of the Private Securities Litigation Reform Act of 1995 by finding state law vehicles for their securities fraud claims.").  After the actions were removed to federal court and transferred to the Southern District of New York, this Court granted Defendants' motion to dismiss each action as precluded by SLUSA.  *See id.* at 7.  This Court stated "Plaintiffs do not seriously contend that dismissal on this basis is not appropriate.  Rather, they move for leave to file an amended, consolidated complaint, adding federal securities law claims *and incorporating allegations that are apparently the fruits of discovery granted by the Florida state court.*"  *Id.* at 3 (emphasis added).  Plaintiffs filed their Consolidated Amended Complaint on October 3, 2013 ("Complaint" or "Am. Compl."), incorporating facts gathered from the millions of pages of documents produced in the state court litigation.

## II.    ALLEGATIONS IN THE COMPLAINT

### A.    Plaintiffs

Plaintiffs are more than one hundred investment vehicles, corporate entities and individuals that invested in the limited partnerships that constitute one or more of the Funds.[4] Plaintiffs disclose virtually nothing about the circumstances of their investments.  For example, they neglect even to allege the dates on which they invested.  Some invested before OAC even acquired Tremont.  *See* Am. Compl., ¶ 10.  Plaintiffs admit knowing that they were investing

---

[3] The Consolidated Amended Complaint combines seven actions:  *Spectrum Select, L.P. et al. v. Tremont Group Holdings, Inc., et al.*, No. 12-cv-09057 (TPG) ("*Spectrum*"); *Anikstein, et al. v. Tremont Group Holdings, Inc., et al.*, No. 12-cv-09058 (TPG) ("*Anikstein*"); *Becker, et al., v. Tremont Group Holdings, Inc., et al.*, No. 12-cv-09060 (TPG) ("*Becker*"); *Bilgore, et al. v. Tremont Group Holdings, Inc., et al.*, No. 12-cv-09061 (TPG) ("*Bilgore*"); *Karasel II, L.P. v. Tremont Group Holdings, Inc., et al.*, No. 12-cv-09062 (TPG) ("*Karasel*"); *Spectrum Select II, L.P., et al. v. Tremont Group Holdings, Inc., et al.*, No. 12-cv-09063 (TPG) ("*Spectrum II*"); *Cocchi, et al. v. Tremont Group Holdings, Inc., et al.*, No. 12-cv-09064 (TPG) ("*Cocchi*").

[4] For example, each of the plaintiffs in *Spectrum*, *Spectrum II*, and *Karasel,* and several of the plaintiffs in the other actions, are themselves investment funds that selected one or more Rye Funds in which to place their investors' money.

A/75845028.6

with Madoff, and that they had "numerous" communications with Tremont about "Madoff [and] his investment strategy and performance." *Id.* at ¶ 55.

No plaintiff alleges any dealings with MassMutual or OAC. None alleges reliance upon even a single representation by MassMutual or OAC.

### B.     MassMutual

MassMutual is a mutual life insurance company headquartered in Massachusetts that owns MassMutual Holding LLC. *See* Am. Compl., ¶ 16. MassMutual Holding owns OAC. In 2001, OAC acquired TGHI, the parent of TPI, the general partner of the Funds. *Id.* at ¶ 153. (The ownership structure mentioned in the Complaint is depicted on Addendum A.) Tremont then became one of many affiliates of MassMutual's "global financial services company." *Id.* at ¶ 16.

Plaintiffs allege, without specifics, that OAC conducted "extensive due diligence" before acquiring TGHI and, as a result of that due diligence, OAC and MassMutual became aware of "Tremont's business with Madoff" and "heavy reliance on Madoff." Am. Compl., ¶¶ 151-52. Of course, Plaintiffs themselves were also aware of "Tremont's business with Madoff" and that the Funds they invested in had "heavy reliance" on Madoff." *See id.* at ¶ 10.

Plaintiffs claim that Tremont knew of the "strong indicia of fraud" surrounding Madoff, *i.e.*, red flags, including Madoff's consistent returns, secrecy and small auditor. *Id.* at ¶¶ 108-32. However, as to MassMutual, Plaintiffs do not allege that MassMutual or OAC knew about the Madoff red flags—or that MassMutual or OAC knew that Tremont knew about the indicia of Madoff's fraud. Instead, Plaintiffs allege in conclusory fashion that MassMutual and OAC "knew or learned of" "Tremont's hands-off approach to monitoring Madoff," that this approach was inconsistent "with the industry standard practices," Tremont made "inconsisten[t] … representations to its limited partners," and that MassMutual and OAC "directed Tremont's fraudulent business-as-usual practices not only to continue, but to expand dramatically." *Id.* at ¶ 143.

The Complaint does not suggest why MassMutual and OAC would spend millions purchasing TGHI if their diligence uncovered "red flags," *id.* at ¶ 152, or that Tremont made misrepresentations to its investors, *id.* at ¶ 143, or that Tremont had ignored the "strong indicia of fraud," *i.e.*, red flags, surrounding Madoff. *Id.* at ¶ 108. Plaintiffs refer to public statements about the acquisition that expressed hoped-for synergies, a legitimate aspiration that indicates nothing wrongful. *Id.* at ¶ 154. Plaintiffs also refer to the "significant revenue stream" OAC acquired when it purchased Tremont. *Id.* at ¶ 155. Profits and revenue are legitimate reasons to acquire a business, and those goals also indicate nothing wrongful.

Plaintiffs allege that under OAC and MassMutual's "management"—really, its *ownership*—Tremont continued to make allegedly false representations about Madoff and its diligence about Madoff to investors, and that assets in the Funds grew. *Id.* at ¶ 144. No specific facts of "management" "oversight" or "involvement" are pled, other than allegations describing ownership and normal incidents of ownership. For example, "[a]s one would expect [an owner to do,] shortly after [OAC] acquired Tremont, it restructured [TGHI's] board." *Id.* at ¶¶ 156-57. Plaintiffs do not allege that any MassMutual officers served on the board of the Funds' general partner, TPI, which is the entity responsible for managing the Funds.

Plaintiffs plead a conclusory allegation that "MassMutual personnel exercised day-to-day supervision over Tremont's business operations," *id.* at ¶ 161, but fail to allege any facts about MassMutual to support that conclusory statement. *See id.* at ¶¶ 162-65. Plaintiffs also state, in conclusory fashion, that "[i]n many other ways, . . . MassMutual integrated Tremont into their own operations, ensuring [MassMutual] had control over the performance of [the] new acquisition and creating economies of scale." *Id.* at ¶ 166. Plaintiffs point to general practices required of all MassMutual affiliates, including Tremont: MassMutual required affiliates to obtain approval for "external audits," "trained … accounting personnel," and "filed consolidated tax returns with the entire MassMutual enterprise," and once directed Tremont to "repatriate dividend revenue" from Bermuda. *Id.* at ¶ 169. Such practices do not indicate that MassMutual "integrated" Tremont's operations or the management of the Rye or Tremont Funds. None of

these allegations suggest that MassMutual knew Tremont was funneling money into a Ponzi scheme or allegedly making misrepresentations to its investors.  *See id.*

Tremont was a sub-advisor of four Oppenheimer funds, in which no plaintiff claims to have invested and none of which had anything to do with Madoff.  *Id.* at ¶ 168.  MassMutual held <u>one</u> due diligence meeting at Tremont in 2006, which Plaintiffs do not allege had anything to do with Madoff, the Funds or Plaintiffs' investments.  *Id.* at ¶¶ 169, 174.  Shortly before Madoff imploded, Tremont approached MassMutual about investing in Madoff, and MassMutual asked diligence questions.  *Id.* at ¶ 174.

Plaintiffs claim that MassMutual "regularly . . . referred to Tremont as part of their organizations."  *Id.* at ¶ 170.  This refers to MassMutual accurately listing TGHI as an affiliate in its annual reports.  In the 2002 and 2003 Annual Reports, MassMutual mentions Tremont's funds in connection with its discussion of "[the OppenheimerFunds'] performance."  *Id.*  The 2005 through 2008 Annual Reports include TGHI in a list of "General Agencies and Other Offices" including the location of "subsidiaries and offices around the globe."  *Id.*  TPI, as required by federal securities laws, identified its ownership structure in its Uniform Application for Investment Advisors Registration.  *See id.* at ¶ 171.  MassMutual and OAC, Tremont's owners, discussed whether to sell Tremont and the "strategic direction of Tremont's business."  *Id.* at ¶ 172.  At no point do Plaintiffs explain how these high-level discussions indicate that MassMutual or OAC were involved in Tremont's investment decisions, its day-to-day operations, or Plaintiffs' investments.

The day after the Madoff Ponzi scheme was revealed, Tremont's Chief Executive Officer contacted MassMutual and OAC, and MassMutual requested data from OAC and Tremont for a presentation to the MassMutual Board of Directors.  *See id.* at ¶¶ 185-86.  These acts, which occurred after Madoff imploded, say nothing about MassMutual's participation in any alleged fraud.

## ARGUMENT

## I.     STANDARD FOR DISMISSAL

To survive dismissal under Fed. R. Civ. P. 12(b)(6), "accepting all factual allegations in the complaint and drawing all *reasonable* inferences in the plaintiff's favor," a complaint "must provide the grounds upon which [Plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comm., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (emphasis added). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

## III.    PLAINTIFFS FAIL TO STATE A CLAIM FOR CONTROL PERSON LIABILITY.

Plaintiffs attempt to impose secondary liability on MassMutual as a control person under §20(a) of the Securities Exchange Act.[5]  Plaintiffs must allege facts sufficient to show: (1) a primary violation by a controlled person; (2) control of the primary violator by the defendant; and (3) that the control person was in some meaningful sense a culpable participant in the primary violation.  *ATSI Comm., Inc.*, 493 F.3d at 108 (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)); *see also Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998).  Culpable participation "must be pled with particularity" in accordance with the Private Securities Litigation Reform Act ("PSLRA").  *CLAL Finance Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*, No. 09 Civ. 2255(TPG), 2010 WL 4177103, at *9 (S.D.N.Y. Oct. 7, 2010); *In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 598 (S.D.N.Y. 2010); *Burstyn v. Worldwide Xceed Group, Inc.*, No. 01 Civ. 1125(GEL), 2002 WL 31191741, at *8 (S.D.N.Y. Sept. 30, 2002).

_____

[5] The statute provides that "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable...."  15 U.S.C. § 78t(a).

Assuming *arguendo* that Plaintiffs plead a primary violation,[6] Plaintiffs do not, and cannot, plausibly allege that MassMutual exercised actual control over Tremont's operations, its investment decisions, the Funds or Plaintiffs' investments or was a culpable participant in any alleged fraud.[7]

_____

[6] Because Plaintiffs fail to plead an underlying primary violation, and because their claims are barred by the Section 10(b)'s five year repose period, 28 U.S.C. § 1658(b), the control person claim must be dismissed.  *See In Re Tremont Sec. Law, State Law and Ins. Litig. (Elendow Fund, LLC v. Rye Select Broad Market XL Fund)*, No. 08-cv-11117 (TPG), 2013 WL 5179064, at *7 (S.D.N.Y. Sept. 16, 2013) ("Because the complaint does not allege a primary violation of the Exchange Act, count II of the complaint, for control-person liability under § 20(a) [against MassMutual and OAC] is also dismissed.").  MassMutual defers to the arguments made by the Tremont Defendants in their Memorandum of Law regarding the lack of a primary violation and that the claims are time-barred by the applicable repose period.

[7] The Court dismissed other § 20(a) control person claims against MassMutual and OAC arising out of their ownership of Tremont.  *See In Re Tremont Sec. Law, State Law and Ins. Litig.*, 2013 WL 5179064, at *7; *Meridian Horizon Fund, L.P. v. Tremont Grp. Holdings, Inc.*, No. 09 Civ. 3708, 2012 WL 6168151, at *2 (S.D.N.Y. Dec. 11, 2012).  Other courts, addressing control person claims under state securities laws, have also dismissed claims against MassMutual and OAC, holding that allegations of ownership, board representation and the like are insufficient to state a claim for control person liability.  *See, e.g., Askenazy v. Tremont Grp. Holdings, Inc.*, Civ. A. No. 2010-04801-BLS2, 2012 WL 440675, at **15-17 (Mass. Super. Jan. 26, 2012) (dismissing control person claims against MassMutual brought under Massachusetts, Colorado, Connecticut, New Mexico, Virginia and Illinois state laws); Ruling and Order, *Agile Safety Variable Fund, L.P. v. Tremont Grp. Holdings, Inc.*, Case No. 10-CV-2904 at **7-8 (Colo. Dist. Ct., Boulder Cty. June 8, 2012) (dismissing control person claims against MassMutual brought under Colorado state law, § 11-51-604(5), C.R.S) (Attached hereto at Addendum B).  The *Askenazy* and *Agile* plaintiffs are represented by the same counsel who represents Plaintiffs.

Applying principles of corporate separateness, courts have dismissed other claims against MassMutual brought by investors in the Funds.  *See In Re Tremont Sec. Law, State Law and Ins. Litig. (Cummins, Inc. v. New York Life Ins. Co.)*, 2013 WL 5393885, at *10 (S.D.N.Y. Sept. 26, 2013) (granting MassMutual's motion to dismiss aiding and abetting claims); *Yale M. Fishman 1998 Ins. Trust v. General Am. Life Ins. Co.*, 2013 WL 842642, at *4-7 (S.D.N.Y. Mar. 7, 2013) (dismissing aiding and abetting claims against MassMutual); *Prickett v. New York Life Ins. Co.*, 896 F. Supp. 2d 236, 244, 251 (S.D.N.Y. 2012) (dismissing claims for fraud, negligent misrepresentation, unjust enrichment and aiding and abetting liability where "[t]he allegations of control appear to rely solely on the ownership of Tremont Group and the fact that Oppenheimer appointed certain individuals to be directors on Tremont's board of directors who also held positions with Oppenheimer and/or MassMutual"); *Zutty v. Rye Select Broad Market Prime Fund, L.P.*, No. 113209/2009, 2011 WL 5962804, at *13 (Sup. Ct. NY Co. Apr. 15, 2011) (dismissing claim against MassMutual because "[p]laintiffs do not base their fraud claims against MassMutual and OAC on any alleged act or omission, but rather, solely on their corporate status

### A.     Plaintiffs Fail to Allege that MassMutual Actually Controlled Tremont or the Funds.

Plaintiffs must plead factual allegations sufficient to support a *reasonable* inference that MassMutual had both (1) "actual control over the primary violator" and (2) "actual control over the *transaction* in question." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 486-87 (S.D.N.Y. 2005) (quoting *In re Global Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910, 2005 WL 1875445, at *13 (S.D.N.Y. Aug. 5, 2005)) (emphasis in original); *see also In re Smith Barney Transfer Agent Litig.,* 884 F. Supp. 2d 152, 167 (S.D.N.Y. 2012)*; H & H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 361 (S.D.N.Y. 2009) (plaintiff must allege that defendant "not only have actual control over the primary violator, but have actual control over the transaction in question"); *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 221 (S.D.N.Y. 1999) ("Actual control is essential to control person liability."); *In re Sotheby's Hldgs., Inc.*, No. 00 Civ. 1041(DLC), 2000 WL 1234601, at *8 (S.D.N.Y. Aug. 31, 2000) ("Actual control over the wrongdoer and the transactions in question is necessary for control person liability.").

### 1.     Allegations of a Parent/Subsidiary Relationship Are Legally Insufficient to Allege Actual Control.

The Complaint states in conclusory fashion that "MassMutual Possessed and Exercised Control over Tremont," (Am. Compl., p. 42) but pleads little more than ownership and the incidents of ownership.  Plaintiffs are clear that they seek to hold MassMutual secondarily liable as a control person based *solely* on its ownership status: Plaintiffs allege that "[a]s . . . the ultimate owner of all the other Defendants . . . MassMutual had the power to direct or cause the direction of the management and policies of Tremont."  *Id.* at ¶ 220.

Existence of a parent/subsidiary relationship is inadequate to state a control person claim without "the additional facts necessary to demonstrate that [the defendants] actually exercised

---

as owners of TPI."); *SSR II, LLC v. John Hancock Life Ins. Co.*, No. 652793/2011, 2012 WL 4513354 (Sup. Ct. NY Co. Sept. 28, 2012) (dismissing claims for fraud, negligent misrepresentation, unjust enrichment and aiding and abetting liability because "[a]ll of the claims against MassMutual and Oppenheimer fail for the same reasons articulated by Justice Lowe in *Zutty*").

A/75845028.6

control over [the primary violator's] general operations." *Lustgraaf v. Behrens*, 619 F.3d 867, 878-79 (8th Cir. 2010); *see also In re WorldCom, Inc. Sec. Litig.*, 02 Civ. 3288(DLC), 2004 WL 1097786, at *3 (S.D.N.Y. May 18, 2004) (parent/subsidiary relationship insufficient to support a control person claim); *Ellison v. Am. Image Motor Co.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (dismissing Section 20 claim where plaintiff's only allegations of control were "the naked assertion that [defendants] were 'officers' of the [controlled entity]" and where complaint was "devoid of any allegation as to how these [defendants] 'controlled' these companies").

To allow a control person claim to survive on the basis of a parent/subsidiary relationship would violate the "general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation omitted). Thus, "'it is not sufficient for [Plaintiffs] to allege that [MassMutual] has control person *status* [*i.e.*, is an owner]; instead, [Plaintiffs] must assert that [MassMutual] exercised *actual* control over the matters at issue.'" *In Re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d at 166 (quoting *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 170 (S.D.N.Y. 2008)) (emphasis in original).

Because "[t]he law allows a corporation to organize so as to isolate liabilities among separate entities," the Second Circuit held, "[u]nder the doctrine of limited liability, a corporate entity is liable for the acts of a separate, related entity only under extraordinary circumstances, commonly referred to as piercing the corporate veil." *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996) (citation omitted).[8] Accordingly, when faced with claims for control person liability

---

[8] By attempting to cast MassMutual as a control person of Tremont by virtue of its corporate ownership, without alleging that MassMutual played any role in an alleged fraud, Plaintiffs are trying to assign liability to MassMutual under the federal securities laws without meeting the requirements for piercing the corporate veil. "New York courts disregard corporate form reluctantly, … when the [corporate] form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation ..., and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego." *Itel Containers Intern. Corp. v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 703 (2d Cir. 1990) (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979)). Here, Plaintiffs allege no basis to pierce the corporate veil and assign liability to MassMutual. TGHI was a preexisting, public company when OAC acquired it in 2001. Am.

against a parent company, courts have required plaintiffs to allege more than ownership or the incidents of ownership. "Merely alleg[ing]" that controlled entities are "subsidiaries and affiliates" coupled with "formulaic recitations" of the elements of control does not state a claim for control person liability. *Public Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 485 (S.D.N.Y. 2010).

### 2. Plaintiffs' Other Allegations about MassMutual Derive from MassMutual's Status as Owner and Do Not Allege Actual Control.

Nearly all of Plaintiffs' allegations concerning MassMutual derive from its status as corporate owner and the lawful exercise of rights of owners, such as maintaining cost control procedures for outside audits, filing enterprise-wide tax returns, disclosing its subsidiaries in annual reports, and being involved in discussions about whether to sell a subsidiary. *See* Am. Compl., ¶ 169. MassMutual and OAC elected some directors to TGHI's board, but this fact does not establish control person liability. *See Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 102 (2d Cir. 2001) (the fact "that certain employees worked for multiple defendants" was insufficient as a matter of law to allege a control person claim).[9] "[I]t is hornbook law that the exercise of the 'control' which stock ownership gives to the stockholders ... will not create liability beyond the assets of the subsidiary. *That 'control' includes the election of directors, the making of by-laws ... and the doing of all other acts incident to the legal status of stockholders.* Nor will a duplication of some or all of the directors or executive officers be fatal." *Bestfoods*, 524 U.S. at 61-62 (citation omitted) (emphasis added); *see also Lustgraaf*, 619 F.3d at 877-79. "[I]t is entirely appropriate for directors of a parent corporation to serve as

---

Compl., ¶¶ 146, 153. As Plaintiffs allege, TGHI was a profitable company, with "various business lines" and a growing stream of revenue. *Id.* at ¶ 148; *see also id.* at ¶¶ 147, 155. TGHI had its own management, a separate board of directors and maintained its own offices. *Id.* at ¶¶ 6, 64, 134, 158, 169.

[9] *See also Howard v. Hui*, No. C 92-3742-CRB, 2001 WL 1159780, at **3, 8 (N.D. Cal. Sept. 24, 2001) (dismissing control person claim alleging overlapping officers and directors); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109 SBA, 2000 WL 1727405, at **15-16 (N.D. Cal. Sept. 29, 2000) (dismissing control person claim alleging defendant's CEO was a director of primary violator and that primary violator was an "operating division" of defendant).

-10-

directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts." *American Protein Corp. v. AB Volvo*, 844 F.2d 56, 57 (2d Cir. 1988).

That TPI—as required by the federal securities laws—disclosed MassMutual and OAC's ownership in its SEC filings, Am. Compl., ¶ 171, also does not demonstrate that MassMutual (or OAC) controlled TPI's day-to-day affairs, let alone Tremont's investment decisions or relationship with Plaintiffs or with Madoff. *See Sedona Corp. v. Ladenburg Thalmann & Co.*, 03 Civ. 3120, 2005 WL 1902780, at *16 (S.D.N.Y. Aug. 9, 2005) ("publicly-filed documents with the SEC indicate that [primary violators] are wholly-owned subsidiaries of [defendant]" are insufficient to state control person claim). Were such a designation alone sufficient to state a claim for control person liability, any minority owner in a company would be exposed to control person claims based on the registrant's putative conduct. This is not the law, nor should it be. *See Bestfoods*, 524 U.S. at 61.

The Complaint—amended after Tremont produced millions of pages of discovery—alleges that MassMutual conducted one diligence meeting at Tremont in 2006 (but does not allege the meeting involved diligence on Madoff or Plaintiffs' investments) and that Tremont approached MassMutual in 2008, shortly before Madoff imploded, regarding a new Madoff investment vehicle and, in response, MassMutual asked questions.[10] *See* Am. Compl., ¶¶ 169, 174. The reasonable inference is that MassMutual was not involved in Tremont's operations, investment processes or relationship with Madoff, but only very occasionally interacted with Tremont with regard to investments. When it did, MassMutual acted in an arms-length manner, conducting diligence. An entity that actually controls Tremont's investment processes would not

---

[10] Other than the allegation that MassMutual knew in 2001 that Tremont invested with Madoff, the only factual allegation that actually refers to MassMutual and Madoff is: "[i]n late 2008, just weeks before Madoff's fraud was revealed, Tremont engaged in discussions with MassMutual about a new potential Madoff investment vehicle. As a result, MassMutual again asked specific questions about Tremont's due diligence process relating to Madoff." Am. Compl., ¶ 174.

need to ask diligence questions.

Finally, Plaintiffs resort to generically lumping MassMutual together into a general group titled "Defendants"—really ten distinct corporate entities.  *See* Am. Compl., ¶¶ 1-10.  Plaintiffs attempt to ascribe, indiscriminately, allegedly wrongful behavior to "Defendants."  Entirely absent from such "guilt by association" pleading is any allegation that MassMutual actually participated in Tremont's operations and had the power to control the transaction at issue.

None of these allegations suggest that MassMutual exercised actual control over the day-to-day operations of Tremont, its investment decisions, the Funds, or was involved in the actual transaction at issue -- the Plaintiffs' investments with Madoff.

> ### 3. Plaintiffs Fail to Allege that MassMutual Exercised Actual Control over the Transaction at Issue, TPI's Management of the Funds or Plaintiffs' Investments.

Plaintiffs fail to allege that MassMutual, directly or indirectly, involved itself in or controlled any of the following activities of TPI's management of the Funds: (1) establishing their investment strategy; (2) selecting or monitoring their investment advisor; (3) monitoring their performance; (4) preparing or reviewing their offering materials; (5) preparing or reviewing account statements for any of the plaintiffs or any other investor in the Funds; or (6) communicating with Plaintiffs on any topic, much less with regard to Plaintiffs' investment in the Funds.  The complete absence of (or basis for) such allegations dooms Plaintiffs' claims against MassMutual.  *See In re Lehman Bros. Mortg. Backed Sec. Litig.*, 650 F.3d 167, 187 (2d Cir. 2011) (dismissing control person claim where allegations "[fell] far short of showing a power to direct the primary violators' 'management and policies'") (citation omitted); *Metge v. Baehler*, 762 F.2d 621, 632 (8th Cir. 1985) (dismissing control person claim where allegations "are not probative of appellants' allegation that [the defendant] actually exercised control over the operation of the corporation in general").

Instead, Plaintiffs allege that:
- TGHI "operated Tremont Partners and the Funds through its division, Rye Investment Management."  Am. Compl., ¶¶ 14, 15.

A/75845028.6

- As general partner, TPI "had the power to direct the investments made by each of the Funds and select investment advisors used by the Funds." *Id.* at ¶ 21. "Using that authority," Tremont selected Madoff; "structured the Funds . . . so that they invested in or derived their value from the same Madoff-managed securities"; and "charged the Funds . . . management fees." *Id.* at ¶¶ 22-24.

- "Tremont and the Funds provided each Plaintiff with the relevant PPM or PPMs [private placement memorandum], other marketing materials, and contemporaneous statements regarding the sale of the investment." *Id.* at ¶ 28. "Before their initial investment, and each year thereafter, Tremont and the Funds sent each Plaintiff annual fact sheets for [their] particular fund." *Id.* at ¶ 29. "[E]ach Plaintiff received monthly reports on their capital accounts from Tremont." *Id.* at ¶ 31.

- The PPMs stated that "[t]he General Partner [TPI] has primary responsibility for monitoring the ongoing activities of the Underlying Manager . . . [and] has sole responsibility for contacting the Investment Advisor or Investment Advisors regarding trading activity, as well as the sole right to hire or terminate the Investment Advisor or Investment Advisors." *Id.* at ¶ 43.

- Tremont issued a "marketing brochure" outlining its process for "selecting and managing investments (*which it called the 'Tremont Process'*)" and describing its "independently structured 'Risk Management Department,'" *id.* at ¶ 50 (emphasis added) and "operated" *its own* website. *Id.* at ¶ 51.

- "Tremont representatives had numerous oral communications with Plaintiffs over time about Madoff, his investment strategy and performance, and the nature of the due diligence and ongoing monitoring *that Tremont and the Funds did of Madoff and BMIS*." *Id.* at ¶ 55 (emphasis added).

Plaintiffs correctly do not mention MassMutual in connection with any of these allegations—and do not claim that MassMutual played any role in Tremont's investment decisions. The only reasonable inference is that MassMutual did not dictate or even participate in Tremont's investment decisions, the management of the Funds or Plaintiffs' investments.

### B. Plaintiffs Fail to Allege "Culpable Participation."

Plaintiffs' control person claim also fails because Plaintiffs failed to adequately plead MassMutual's culpable participation in any alleged wrongdoing. "As thus interpreted, § 20(a) requires that a plaintiff plead facts showing the defendant's culpable participation." *Meridian Horizon Fund, L.P. v. Tremont Grp. Holdings, Inc.*, No. 09 Civ. 3708, 2012 WL 6168151, at *1 (S.D.N.Y. Dec. 11, 2012). "The Complaint must provide some detail about what [the defendant]

is alleged to have done, and when he did it, in order for [the Court] to hold that the Complaint provides 'particularized facts' of [the defendant's] culpable participation." *Mishkin v. Ageloff*, No. 97 Civ. 2690(LAP), 1998 WL 651065, at *26 (S.D.N.Y. Sept. 23, 1998).

### 1.    Plaintiffs Fail to Allege that MassMutual Had Knowledge of Tremont's Alleged Misconduct.

"[P]laintiffs must plead with particularity facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct." *Burstyn*, 2002 WL 31191741 at *8 (citation omitted).  "A plaintiff may plead either conscious misbehavior or recklessness to satisfy the state of mind portion of the culpable participation element." *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, No. 00 Civ. 8058, 2001 WL 1111508, at *10 (S.D.N.Y. Sept. 20, 2001); *see also In re CIT Grp. Inc. Sec. Litig.*, No. 08 Civ. 6613(BSJ), 2010 WL 2365846, at *5 (S.D.N.Y. June 10, 2010) ("a plaintiff must allege at least "particularized facts of the control person's conscious misbehavior or recklessness.") (citation omitted).  Recklessness is defined as "an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).  In other words, Plaintiffs must allege that defendants were aware of such major risks that their state of mind "approximat[ed] actual intent." *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009).

Plaintiffs fail to allege that MassMutual had knowledge of any alleged wrongdoing, let alone that MassMutual's state of mind "approximated actual intent."  Plaintiffs do not allege that MassMutual took any action or was engaged in any relevant decision-making with respect to the alleged fraud.  MassMutual was not involved in Tremont's selection of Madoff as a manager—Tremont's relationship with Madoff predates the 2001 OAC acquisition.

Plaintiffs' theory of culpable participation appears to be that OAC conducted "extensive due diligence" on TGHI and was attracted to its growing revenue streams.  Am. Compl., ¶¶ 151,

155. MassMutual "after taking control of Tremont . . . chose not to stop . . . Tremont's fraudulent conduct of its business," the focus of which was "the Madoff relationship," and "[a]s a result, [its] decision not to stop the fraudulent practices in which Tremont was engaged, and indeed to continue them—and to continue to reap the fraudulent profits from the scheme—made [MassMutual and OAC] culpable participants in the fraud." *Id.* at ¶¶ 221-22.  This is not a particularized allegation of conscious misbehavior or recklessness sufficient to plead the state of mind required for culpable participation.

"[I]f scienter could be pleaded on" the basis of wanting to maintain the appearance of corporate profitability or of the success of a corporate investment "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Chill v. Gen. Electric Co.*, 101 F.3d 263, 268 (2d Cir. 1996) (affirming the dismissal of a complaint brought against a corporate parent for allegedly ignoring "red flags" regarding reporting false profits generated by its subsidiary).  In *Chill*, the Second Circuit stated that allegations that a parent company wanted to have an investment in a subsidiary appear profitable was a "generalized motive, one which could be imputed to any publicly owned, for-profit endeavor, [and] not sufficiently concrete for purposes of inferring scienter." *Id.*  Really, stripped of ad hominem, all Plaintiffs claim is that MassMutual acquired a pre-existing business and let it continue to operate as it had before the acquisition.

The Complaint's other allegations do not support any reasonable inference—let alone particularized facts showing—that MassMutual knew that it was investing in a company (TGHI) that did business with a manager (Madoff) who was running a Ponzi scheme or that Tremont was making misrepresentations to its investors about the nature of Madoff's business or its oversight of Madoff.[11]  The allegations also do not support any reasonable inference that MassMutual

---

[11] The allegation that one of MassMutual's former advisors warned MassMutual that Tremont heavily relied on Madoff as a manager, in addition to being inadmissible hearsay, does not support any inference that MassMutual knew Madoff was running a Ponzi scheme or Tremont was misleading investors about Madoff or the Funds.  *See* Am. Compl., ¶ 152.

A/75845028.6

knowingly and with intent chose to let a fraud continue for seven years.[12]  Why MassMutual had

any interest in approving a $145 million purchase of a company that was investing in a Ponzi

scheme is not explained.   The only reasonable inference applicable here is that neither

MassMutual nor OAC suspected that one of Tremont's managers was engaged in fraud or that

Tremont was making knowing misrepresentations about Madoff.[13]

----

[12] Courts have dismissed control person claims against parent companies because plaintiffs failed to allege particularized facts about the parent's culpable participation.   In *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 136-37 (S.D.N.Y. 2013), plaintiffs alleged that a corporate grandparent "dominated and controlled" a corporate parent, which in turn "controlled and directed" the alleged primary wrongdoer.   As evidence of the corporate grandparent's control of the corporate parent, plaintiffs alleged that the two entities rotated leadership, that the grandparent was the parent's main source of funding, had provided loans to the parent and guaranteed its funding, that the grandparent makes decisions on behalf of the parent on major matters, and that the entities share office space.  *Id.* at 137.   As evidence of the corporate parent's control over the alleged primary wrongdoer, plaintiffs "set forth many allegations," such as that the parent dictates general professional and ethical standards and auditing procedures for its member firms, has control over the acceptance (or rejection) of engagements by its member firms, prohibits affiliates from suing one another, arranges for the transfer of employees from one affiliate to another, plays a substantial role in legal and risk management of its affiliates, and that the parent dictates the methodologies for its affiliates to use in conducting audits.  *Id.*   The court held that plaintiffs had alleged only "general and conclusory allegations…failing to set forth particularized facts establishing [the parent companies'] culpable participation."  *Id.* at 138.

In *Bayerische Landesbank, New York Branch v. Barclays Capital, Inc.*, the court dismissed control person claims against a corporate parent.   902 F. Supp. 2d 471, 475 (S.D.N.Y. 2012) (citing *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 406 (S.D.N.Y. 2007)).   The court held that allegations that the parent "was aware of or directly participated in the fraud alleged herein, including by concealing adverse material information about the purpose of [a security], [the security's] collateral selection process, the independence of the collateral manager, the nature of the collateral, and the risk of investing in [the security]" were conclusory and failed to meet the pleading standard of the PLSRA.  *Id.* at 474-75.

[13] Numerous courts have rejected the inference that allegations of knowledge of public red flags (even if true) are tantamount to knowledge of the Madoff fraud.   In *Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.*, the Court held that the existence of publicly known red flags did not support an inference that Tremont's auditor, KPMG, knew of Madoff's fraud — rather, "the more compelling inference as to why Madoff's fraud went undetected for two decades was his proficiency in covering up his scheme and deceiving the SEC and other financial professionals." 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010) (Griesa, J.), *aff'd*, 2012 WL 2754933 (2d Cir. July 10, 2012).   In *Zutty*, the New York Supreme Court held that allegations about others' "'suspicions' regarding Madoff" do not create an inference that defendants (including MassMutual) "knew about Madoff's Ponzi scheme" or "made it so obvious that

### 2.      Plaintiffs Fail to Allege that MassMutual Participated in Any Fraud.

The control person claim fails for the additional reason that Plaintiffs do not allege that MassMutual participated in any alleged violations of the securities laws.  A complaint "must provide some detail" about what a defendant "is alleged to have done, and when [the defendant] did it" for a court to assess culpable participation.  *Mishkin*, 1998 WL 651065, at *26.

Having failed to allege that MassMutual exercised actual control over Tremont's operations or actual control over the transaction at issue, Plaintiffs cannot meet the heightened pleading standard to allege culpable participation.  Plaintiffs do not allege in any detail whatsoever the how and when MassMutual allegedly participated in a fraud.  Plaintiffs simply have pled no particularized facts that support a claim that MassMutual culpably participated in an alleged fraud.  *See Edison Fund v. Cogent Inv. Strategies Fund, Ltd.,* 551 F. Supp. 2d 210, 231 (S.D.N.Y. 2008) (dismissing claim of control person liability where plaintiffs "do not allege particularized facts as to" defendant's "participation in the fraud"); *see also VT Investors v. R&D Funding Corp.*, 733 F. Supp. 832, 841-42 (D.N.J. 1990) (control person claim dismissed for failure "to allege any knowing and substantial participation in the wrongdoing").

## IV.    THE COURT SHOULD DISMISS THE SECURITIES FRAUD CLAIM AGAINST MASSMUTUAL HOLDING.

Plaintiffs fail to exclude MassMutual Holding from Count II, a claim for securities fraud in violation of Securities Exchange Act §10(b) and SEC Rule 10b-5.  This appears to be in error because Plaintiffs do not assert this claim against the other upstream parents, and MassMutual Holding, as it names discloses, is a *holding company*.  Even if Plaintiffs intentionally alleged that MassMutual Holding committed securities fraud, the claim fails and should be dismissed.

"To adequately state a cause of action for securities fraud under § 10(b) of the Exchange Act and Rule 10b–5, a plaintiff must assert facts showing that 'the defendant made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on defendant's action caused plaintiff injury.'"  *McIntire***,** 927 F.Supp.2d at 119 (quoting *Kalnit v. Eichler*, 264

---

Madoff was running a Ponzi scheme that defendants must have known about the scheme and wanted to further it."  *Zutty*, 2011 WL 5962804, at *8-12.

F.3d 131, 138 (2d Cir.2001)).  "Securities fraud actions are also subject to the heightened pleading requirements of the PSLRA as well as those of Rule 9(b)."  *Id.*  To meet the heightened pleading standards of the PSLRA, plaintiffs alleging securities fraud must "(1) specify the statements that the plaintiff alleges were fraudulent, (2) identify the speaker, (3) indicate when and where the statements were made, and (4) explain why the statements were fraudulent."  *Id.* Omissions are actionable only where "the [defendant] is subject to a duty to disclose the omitted facts."  *In re Time Warner Inc. Sec. Liti*g., 9 F.3d 259, 267 (2d Cir.1993).  Plaintiffs have not identified any instance in which MassMutual Holding communicated with them at all, much less about Madoff, nor have they identified any reason that MassMutual Holding would be "subject to a duty to disclose the omitted facts."

## CONCLUSION

For the foregoing reasons, Massachusetts Mutual Life Insurance Company and MassMutual Holding LLC pray this Court grant their motion to dismiss with prejudice.

Dated: December 6, 2013

**BINGHAM MCCUTCHEN LLP**

By: /s/ Carol E. Head
    Kenneth I. Schacter
    kenneth.schacter@bingham.com
    Bingham McCutchen LLP
    399 Park Avenue
    New York, NY 10022
    Telephone:  212-705-7000
    Facsimile:  212-702-3622

    Joseph L. Kociubes (*pro hac vice*)
    joseph.kociubes@bingham.com
    Carol E. Head (*pro hac vice*)
    carol.head@bingham.com
    Bingham McCutchen LLP
    One Federal Street
    Boston, MA 02110-1726
    Telephone:  617-951-8000
    Facsimile:  617-951-8736

    *Attorneys for Defendants*
    *Massachusetts Mutual Life Insurance*
    *Company and MassMutual Holding LLC*